## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANDRE BELL,

                  Petitioner,                  Case Number: 2:10-cv-14859

v.                                          HON. MARIANNE O. BATTANI

THOMAS BIRKETT,

                  Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Andre Bell filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to convictions for first-degree criminal sexual conduct and first-degree home invasion. He argues that his conviction was obtained in violation of his constitutional rights because the prosecutor committed misconduct, insufficient evidence supported the convictions, and trial and appellate counsel were ineffective. Respondent argues that the claims are meritless and/or procedurally defaulted.

The Court denies the petition.

## I.     Background and Procedural History

Petitioner's convictions arise from an incident at the home of Fern Quinn on December 18, 2006. Quinn testified that, on that date, someone knocked on her apartment door at approximately 3:15 p.m. When she opened the door slightly, she saw a

man she did not know.  She attempted to close the door but the man pushed it open and entered her apartment.  Quinn testified that she fell back onto her couch.  The man forcibly engaged in sexual intercourse with her.  Quinn then told the man that she needed to leave to rent some movies at the apartment complex's office.  He allowed her to leave.  She saw him drive away in a 4-door gray vehicle.  When she arrived at the office, she told Adrian Wiltzer what had happened.  Wiltzer called the police, who took Quinn to the YWCA for a rape examination.  Quinn identified Petitioner as her attacker.

Kalamazoo Township Police Detective Mike Szekely testified that he interviewed Fern Quinn.  Based upon information learned from Quinn and neighbors, he began looking for a suspect nicknamed "Piper."  Ultimately, he learned that Petitioner went by the name "Piper."  He spoke to Petitioner on the phone and advised Petitioner that he would like to talk to him.  Petitioner voluntarily came to the police station.  His tape-recorded interview was played for the jury.  During the interview, Petitioner admitted that he had intercourse with Quinn, but claimed that it had been consensual.

Petitioner was convicted by a jury in Kalamazoo County Circuit Court.  On June 4, 2007, he was sentenced to seventeen to thirty years in prison for the first-degree criminal sexual conduct conviction and ten to twenty years in prison for the home invasion conviction.

Petitioner raised a single claim in his appeal of right to the Michigan Court of Appeals:

The prosecutor committed misconduct on several occasions by improperly

2

referencing the victim's religious beliefs.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Bell*, No. 137883 (Mich. Ct. App. Feb. 24, 2009). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising these claims:

I.    The prosecutor committed misconduct on several occasions by improperly referencing the victim's religious beliefs.

II.   There was insufficient evidence presented that would support Petitioner's convictions.

III.  Petitioner was denied the effective assistance of both trial and appellate counsel.

The Michigan Supreme Court denied leave to appeal. *People v. Bell*, 483 Mich. 897 (Mich. Feb. 24, 2009).

Petitioner filed a habeas corpus petition in this Court, which was dismissed without prejudice for failure to exhaust state court remedies.

Petitioner filed a motion for relief from judgment in the trial court. He raised the claim that he was denied the effective assistance of trial and appellate counsel. The trial court denied the motion. *People v. Bell*, No. C06-0902 FC (Kalamazoo County Cir. Ct. Oct. 2, 2009). Petitioner's applications for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court were denied. *People v. Bell*, No. 295068 (Mich. Ct. App. Feb. 16, 2010); *People v. Bell*, 487 Mich. 855 (July 26, 2010).

Petitioner then filed the pending petition. He raises these claims:

I.    The prosecutor committed misconduct on several occasions by improperly referencing the victim's religious beliefs.

3

II.    There was insufficient evidence presented that would support Petitioner's convictions.

III.    Petitioner was denied the effective assistance of both trial and appellate counsel.  Specifically, trial counsel was ineffective for failing to object to the prosecutor's misconduct and for failing to call Petitioner to testify at trial.  Appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness regarding his failure to object to the prosecutor's misconduct and his failure to call Petitioner to testify.

## II.    Standard

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute

4

permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See*

*Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).   "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III.    Discussion

### A.    Prosecutorial Misconduct Claim

In his first habeas claim, Petitioner argues that the prosecutor improperly introduced the victim's religious beliefs into the trial on four different occasions in an attempt to bolster her credibility.  Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy

might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's prosecutorial misconduct claim.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, __ U.S.__, 132 S. Ct. 2148, 2153, (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must ask whether the Michigan Court of Appeals' (which, despite finding the claims not properly preserved, nevertheless, denied them on the merits) decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, __ U.S. at __, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __, 131 S. Ct. at 786-87.

Michigan has both a statute and an evidentiary rule relating to this issue. Mich. Comp. Laws § 600.1436 provides in part that "[n]o witness may be questioned in relation to his opinions on religion." Similarly, Michigan Rule of Evidence 610 provides that

7

"[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by means of their nature the witness' credibility is impaired or enhanced."  The purpose of such evidentiary rules "is to strictly avoid any possibility that jurors will be prejudiced against a certain witness because of personal disagreement with the religious views of that witness." *People v. Jones*, 82 Mich. App. 510, 516, 267 N.W.2d 433 (Mich. Ct. App.1978).

The first instance of alleged misconduct in this case occurred during opening statement.  The prosecutor stated that, when Petitioner forced the victim onto the couch, the victim's head "fell upon her Bible that she reads."  Petitioner argues that this statement was not supported by the evidence because she did not testify that she reads the Bible.  The Michigan Court of Appeals held that, while the evidence did not support the statement that the victim reads her Bible, the reference was isolated and any potential prejudice was cured by the jury instruction that the arguments of the attorney were not evidence and that the jurors were to consider only the evidence admitted at trial.

Second, Petitioner objects to the victim's testimony, in response to the prosecutor's question, "[W]hat was on your couch at the time?" She responded that a Bible was on her couch.  The Michigan Court of Appeals found the prosecutor did not commit misconduct in eliciting this testimony, reasoning, in relevant part:

> [T]he victim indicated that her head landed upon her Bible, which was located on the couch, when the defendant forced her to engage in sexual intercourse.  Notably, the prosecutor had not finished her inquiry before the victim gave this information.  Concurrently, the prosecutor also elicited testimony from the victim that Christmas cards and gifts for her son were on

8

the couch and that the hand weights she regularly used for exercise were nearby but were not within her reach when the assault occurred. In addition, when reviewing the content of photographic exhibits, which were stipulated to by defendant's counsel for admission into evidence, the victim identified her couch as the site of the assault. In the photograph of the couch the bag with the Christmas gifts and her Bible were . . . visible. When asked where her head was while on the couch during the assault, the victim indicated on "my Bible."

. . . [T]he issue before this Court is whether the challenged questions and comments by the prosecutor served to improperly interject the victim's religious beliefs, and the relationship of those beliefs on her truthfulness, into the proceedings.

. . . [W]e find that the prosecutor's questions did not improperly interject the victim's religious beliefs into the proceedings. At no time did the prosecutor question the victim about her religious beliefs or assert that she was credible because of her faith. Contrary to defendant's assertions on appeal, the referenced comments and testimony pertained to a description of the crime scene and comprised evidence relied on by the prosecutor to rebut defendant's assertion that he and the victim engaged in consensual sex. The questions by the prosecutor were frequently open-ended and do not demonstrate an intention to elicit specific testimony from this witness. Rather the questions served primarily to clarify her testimony and were not used to bolster her credibility. The prosecutor never inquired or sought to have the victim express her opinions and religious beliefs. Although inquiries touch on religious references, if they comprise relevant questions regarding the actions of a witness during the events of a crime, but do not elicit "opinions on the subject of religion," error does not occur. . . . .

*Bell*, slip op. at 2-3.

Third, Petitioner argues that the prosecutor acted improperly in eliciting from the victim testimony regarding her being counseled by her priest, after the assault, and the frequency of her attendance at church. The victim testified that she spoke to her priest about the assault and "never lied to a priest." The Michigan Court of Appeals held that the prosecutor's conduct was not improper. First, the state court noted that as an

9

alternative charge to sexual penetration during commission of another felony, Petitioner

was also charged with the offense of using force or coercion to accomplish sexual

penetration and causing personal injury.  The element of personal injury includes mental

anguish.  The prosecutor, on direct examination, elicited testimony that the victim

experienced post-assault anxiety and received counseling with her priest and through the

YMCA.  On cross-examination, defense counsel attempted to minimize the victim's

counseling with her priest.  On re-direct, the prosecution clarified that the extent of the

victim's reliance on her priest for counseling.  The Michigan Court of Appeals held all of

this testimony relevant to the element of mental anguish.  In addition, the state court held

that the victim's assertion she would not lie to a priest was spontaneous and was not

further used by the prosecutor to attempt to bolster the victim's credibility.

*Bell*, slip op. at 3.

Finally, Petitioner objects to the following portion of the prosecutor's closing

argument:

> And the irony of this whole case, ladies and gentlemen, is the very book
> that she uses and reads and lives her life by is the one that she laid her head
> on when the defendant committed this vicious assault against her, the
> assault that the defendant in this case claims was consensual.
>
> Well, ask yourself, . . . does it make sense that if you're going to have sex
> voluntarily, why not do it on the bed?  I mean . . . she did testify that she
> doesn't have a lot of furniture, but she does have a bed.
>
> If it was a consensual situation, why not just do it on the bed? . . . [T]he
> photographs will show the black bag that contained the contents of the few
> Christmas gifts she was going to give her son.  It had Christmas cards that
> she was preparing to give to some of her friends, as well as her Bible.  If

10

> you are going to have consensual sex, aren't you going to move that stuff
> from the couch so that you can at least make it a little bit more comfortable?

Tr., Vol. III, at 335.

The Michigan Court of Appeals held that the prosecutor's argument was proper because it addressed the plausibility of the Petitioner's defense, that the encounter was consensual, based upon the evidence presented at trial.

The prosecutor's arguments and the testimony elicited by her were relevant to the issue of Petitioner's culpability. The prosecutor's arguments and questions were attempts to demonstrate that the evidence was more consistent with a non-consensual rather than consensual encounter and that the victim suffered mental anguish. The arguments and questions were spurred by and consistent with testimony adduced at trial. The prosecutor did not ask the jury to find the victim credible based upon her religious beliefs. Instead, she asked the jury to convict based upon the evidence presented. Moreover, the witness's statement that she would not lie to a priest was not specifically elicited by the prosecutor nor was the statement misused by the prosecutor. Therefore, the Court concludes that the state court's finding of no prosecutorial misconduct was reasonable.

### B.  Ineffective Assistance of Trial and Appellate Counsel

Petitioner argues that he received ineffective assistance of trial and appellate counsel. He argues that his trial attorney was ineffective for failing to object to the prosecutor's misconduct and for failing to call Petitioner to testify at trial. He further argues that his appellate attorney was ineffective for failing to raise trial counsel's

11

ineffectiveness on direct appeal.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

The Court found reasonable the state court's decision that no prosecutorial

12

misconduct occurred.  Counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir.2006).  And, appellate counsel cannot be found ineffective for failing to raise a meritless claim on appeal.  Accordingly, the Petitioner is not entitled to habeas relief on this claim.

Petitioner also argues that counsel was ineffective in failing to call him to testify in his own defense.  Respondent argues that this claim is procedurally defaulted.  The Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claim.  *See Hudson,* 351 F.3d at 215.

It is well-established that a criminal defendant has a constitutional right to testify in his own behalf.  *See Rock v. Arkansas*, 483 U.S. 44, 52-53 & n. 10 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir.1997).  When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed.  *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).  A trial court has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives his right to testify.  *United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000).  In addition, a state trial judge is not constitutionally required to specifically address a criminal defendant and both explain that he has a right to testify and ask him whether he wishes to waive that right.  *Siciliano v. Vose*, 834 F. 2d 29, 30 (1st Cir. 1987).  Waiver of the right to testify may be inferred from a defendant's conduct.  Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.  *Webber,* 208 F. 3d at 551.

Here, Petitioner did not alert the trial court at any time that he wanted to testify.

13

At sentencing, Petitioner told the Court that he wanted to take the stand, but was told not to by his attorney because he would only incriminate himself if he did so. He further stated, "That's the reason I didn't take the stand." Tr., 6/4/07 at 5. Petitioner's attorney responded that he visited Petitioner in jail the two evenings preceding the day the defense rested its case and discussed Petitioner's right to testify with him. The attorney also stated that Petitioner chose not to testify. The record is void of any indication by Petitioner that he was unaware of his right to testify or that he disagreed with the decision not to testify. His own statement at sentencing belies any claim that he was prevented from testifying. He did not testify because his attorney advised him that he would not aid his own defense if he did so. The record before the Court shows that the decision not to testify was a tactical one in which Petitioner acquiesced. Petitioner has not overcome the presumption that he willingly agreed not to testify. *Gonzales,* 233 F. 3d at 357.

### C.   Sufficiency of the Evidence

Finally, Petitioner argues that insufficient evidence was presented to support his conviction. Respondent argues that this claim is unexhausted and, because no avenue for exhaustion remains available in state court, procedurally defaulted.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim "within 'one complete round of the State's established appellate review process.'" *Carter v. Mitchell*, __ F.3d __ 2012 WL 3854787, *6 (6th Cir. Sept. 6, 2012) (quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004)); 28 U.S.C. § 2254(b). State prisoners in Michigan

14

must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather*, 822 F.2d at 1420, n.3.

Petitioner raised this claim for the first time in his application for leave to appeal to the Michigan Supreme Court on direct review. He did not raise this claim on collateral review. Thus, this claim is unexhausted because he has not presented it within one complete round of Michigan's established review process. No state-court remedy is available to Petitioner in state court because he already filed a motion for relief from judgment and may not file a successive motion. See M.C.R. 6.502(G)(1) ("one and only one motion for relief from judgment may be filed with regard to a conviction"). Where a habeas petitioner fails to exhaust his claims in state court, but is barred from doing so "his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). Rather, the petitioner must show cause to excuse his failure to present the claims in state court and actual prejudice to his defense at trial or on appeal. *Id.*

Here, Petitioner alleges ineffective assistance of appellate counsel to excuse his default. Ineffective assistance of appellate counsel on direct review would not excuse his failure to present this claim on collateral review in state court. *Hannah*, 49 F.3d at 1196. *See also Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (holding that a claim of ineffective assistance of appellate counsel is properly exhausted when it is raised at the

15

first opportunity to do so – in a post-conviction motion for collateral relief in state court).

Thus, this claim is procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id.* To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, this claim is procedurally barred.

## IV.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief and the petition must be dismissed.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve

16

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

When a court denies relief on procedural grounds without addressing the merits, a

certificate of appealability should issue if it is shown that jurists of reason would find it

debatable whether the petitioner states a valid claim of the denial of a constitutional right,

and that jurists of reason would find it debatable whether the district court was correct in

its procedural ruling. *Slack*, 529 U.S. at 484-85.  The Court concludes that reasonable

jurists would not find the Court's ruling debatable and that Petitioner has failed to make a

substantial showing of the denial of a constitutional right.  A certificate of appealability is

not warranted.

  Accordingly,

  **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the

matter is **DISMISSED WITH PREJUDICE.**

  **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


       s/Marianne O. Battani
       MARIANNE O. BATTANI
       UNITED STATES DISTRICT JUDGE

DATE: October 31, 2012

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Order was served upon the Petitioner via ordinary U.S. Mail and Counsel for the Respondent, electronically.

<u>s/Bernadette M. Thebolt</u>
Case Manager